THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**SAM WHITFIELD,** *et al*.                                                                                           **PLAINTIFFS**

v.                                     Case No. 5:18-cv-00229-KGB

**AMERICAN FEDERATION OF**
**GOVERNMENT EMPLOYEES,** *et al*.                                                             **DEFENDANTS**

## ORDER

Before the Court is the motion for summary judgment filed by defendants the American Federation of Government Employees, National President David Cox, National Vice President Michael Kelly, National Representatives Jesus Sanchez and Robert Harrison, the National Executive Council, and Local 953 Members Dave Gassett and Rodney Davis (collectively, "the Union Defendants") (Dkt. No. 3). Also before the Court is defendant Sherri Harrison's (collectively with the Union Defendants, "defendants") motion to dismiss (Dkt. No. 23). For the reasons stated herein, the Court grants both motions.

**I.     Factual And Procedural History**

Plaintiffs are members of the American Federation of Government Employees, AFL-CIO ("AFGE" or "the Union"), Local 953, employed at the Pine Bluff Arsenal ("PBA"), a United States Army installation located in Jefferson County, Arkansas (Dkt. No. 1, ¶ 1). Plaintiffs filed a class-action complaint against defendants on September 7, 2018 (Dkt. No. 1).

On November 19, 2018, the Union Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 3). On December 26, 2018, Ms. Harrison notified the Court of her intent to file a motion to dismiss and moved to stay the matter due to a lapse of government appropriations (Dkt. No. 16). On January 2, 2019, the Court stayed this case pending the restoration of funding to the Department of Justice (Dkt. No.

17). On January 29, 2019, Ms. Harrison notified the Court that funding was restored on January 28, 2019 (Dkt. No. 18, ¶ 4). On November 21, 2019, the Court lifted the stay in this case (Dkt. No. 22).

On December 12, 2019, Ms. Harrison filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) (Dkt. No. 23). On February 18, 2020, the Court, recognizing that the Union Defendants attached matters outside the pleadings to their motion to dismiss, converted the motion into a motion for summary judgment under Federal Rule of Civil Procedure 56 (Dkt. No. 31). To date, plaintiffs have not responded to either the Union Defendants' motion for summary judgment or Ms. Harrison's motion to dismiss.

## II. Discussion

Because Ms. Harrison has not been properly served, the Court must dismiss this action without prejudice against her. Additionally, because plaintiffs have neither identified nor served the Doe defendants, the Court dismisses without prejudice plaintiffs' claims against them. Finally, the Court determines that the Union Defendants are entitled to summary judgment as a matter of law on the federal claims asserted against them, and the pre-empted federal claims asserted against the Union Defendants are dismissed with prejudice. The Court dismisses without prejudice any non-pre-empted federal and state law claims asserted by plaintiffs.

### A. Defendant Sherri Harrison's Motion To Dismiss

Ms. Harrison is sued in both her official and individual capacities. Ms. Harrison is employed at the PBA, where she serves as a liaison between the PBA and the AFGE (Dkt. No. 1, ¶ 17). "To serve a United States . . . officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by

registered or certified mail to the agency, corporation, officer, or employee." Fed. R. Civ. P. 4(i)(2). Federal Rule of Civil Procedure Rule 4(i)(3) states:

> To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Rule 4(i)(1), in turn, provides that, to serve the United States, a party must "deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought," and "send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(A)(i), (B).

Under Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "There is no comprehensive definition of what constitutes good cause sufficient to warrant a mandatory extension under Rule 4(m)." *Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 613 (8th Cir. 2003) (per curiam). "A showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010) (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)).

Here, the record reflects that Ms. Harrison was served with the summons and the complaint on October 29, 2018 (Dkt. No. 13). To date, however, service has not been accomplished on the United States Attorney for the Eastern District of Arkansas or the United States Attorney General. Plaintiffs have not offered any explanation for failing to serve Ms. Harrison properly.

3

Consequently, the Court "must dismiss the action without prejudice" against Ms. Harrison. Fed. R. Civ. P. 4(m).

### B. Claims Against Doe Defendants

The Court also notes that plaintiffs have neither identified nor served the Doe defendants. On November 21, 2019, the Court ordered plaintiffs to show cause within 14 days why their claims against the Doe defendants should not be dismissed for failure to serve (Dkt. No. 22, at 2–3). To date, plaintiffs have not complied with the Court's Order, and the deadline for doing so has expired. Accordingly, the Court dismisses without prejudice plaintiffs' claims against the Doe defendants.

### C. The Union Defendants' Motion For Summary Judgment

The Union Defendants are entitled to summary judgment as a matter of law on the federal claims asserted against them, and the Court dismisses with prejudice plaintiffs' pre-empted federal claims against these defendants. The Court dismisses without prejudice any remaining federal and state-law claims.

#### 1. Summary-Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

### 2. Summary-Judgment Record

The factual allegations are taken from the complaint and are deemed true for purposes of this motion. Plaintiffs are members of AFGE, Local 953, employed at the PBA (Dkt. No. 1, ¶ 1). Each plaintiff is African American and served on the executive board of Local 953 (*Id.*). On October 4, 2016, Local 953 held an election of officers (*Id.*, ¶ 2). Although no one candidate for president received a majority of votes, requiring a run-off election under the Union's rules, Jesus Sanchez swore in Dave Gassett as Local 953's president (*Id.*). An election protest was filed with Mr. Gassett, and a run-off election was held on March 7, 2017 (*Id.*, ¶¶ 2–4). Rodney Lagrone won and was sworn in as President of Local 953 (*Id.*, ¶ 4). Plaintiffs allege that defendants conspired to ensure that Mr. Lagrone would win the run-off election (*Id.*, ¶¶ 2–3).

Ten days after being sworn in as Local President, Mr. Lagrone resigned from the post and Local 953 First Vice President Rodney Davis was elevated to the position of Local President (*Id.*, ¶¶ 4–5). Plaintiffs allege that Mr. Davis was derelict in his duty (*Id.*, ¶¶ 6–12, 14–16).

Following Mr. Davis' elevation to the position of Local President, Sam Whitfield was appointed to the position of First Vice President of Local 953 (*Id.*, ¶ 13). At that time, Elbert Bell, Nathaniel Fuller, and Margaret Hood also served on the executive board of Local 953 (*Id.*). On June 22, 2017, these individuals held a regular union meeting at which the union body unanimously voted to remove Mr. Davis as Local President and elevate Mr. Whitfield to the position of Local President (*Id.*, ¶ 18). Plaintiffs allege that, after the unanimous vote to remove Mr. Davis, defendants conspired to undermine Local 953 and mounted a concerted attack on Local 953 (*Id.*, ¶¶ 20–23). AFGE took the position that Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood did not follow the procedures outlined in the AFGE National Constitution when they purportedly removed Mr. Davis from office and that, therefore, Mr. Davis, not Mr. Whitfield, was still President of Local 953 (*Id.*, ¶¶ 18, 20, 22, 27, 35, 62, 66).

Later that month, National President David Cox notified Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood that internal disciplinary charges had been filed against them (*Id.*, ¶ 27). Mr. Cox accused these individuals of "improperly appoint[ing] Sam Whitfield to the position of Local President" and "ignor[ing] all advice from the National Vice President and imped[ing] all of his attempts to correct these errors" and suspended them from any and all offices they held within AFGE "for conduct detrimental and inimical to the best interests of the Federation and constituting offenses against the Federation." (Dkt. No. 3, at 4). Mr. Cox also advised Mr. Whitfield that "he has no legal right to the office of President of Local 953" and warned him that he "must cease and desist all attempts to act in that capacity." (*Id.*, at 5). Finally, Mr. Cox appointed an independent

arbitrator to hear the charges, which plaintiffs believe constituted a conflict of interest (Dkt. No. 1, ¶ 28).

On October 28, 2017, a multi-party complaint was filed against Mr. Cox, Mr. Kelly, Mr. Sanchez, Robert Harrison, and Sherri Harrison with the AFGE National Executive Council ("NEC") (*Id.*, ¶¶ 24–26). On November 8, 2017, an AFGE Internal Disciplinary Trial was held regarding the charges filed against Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood. (Dkt. No. 3, at 6). The independent arbitrator rendered his decision on December 8, 2017, finding that Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood had violated Article XXIII of the AFGE National Constitution and recommending that each be removed from office, barred from holding office for two years, and suspended from membership for six months. (*Id.*, at 6–66). Plaintiffs allege that Mr. Gassett and Ms. Harrison "engaged in a course of action to harass and intimidate Plaintiff Sam Whitfield by purposely posting in assorted bright colors copies of the arbitrator's decision all over the arsenal." (Dkt. No. 1, ¶ 39).

Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood appealed the decision of the independent arbitrator (*Id.*, ¶ 30). The NEC considered the appeals and sustained the disciplinary actions taken against Mr. Whitfield, Mr. Bell, Mr. Fuller, and Ms. Hood (*Id.*, at 66).

Plaintiffs allege that defendants, among other things, misappropriated union funds, warranting criminal charges, denied plaintiffs due process, and harassed, intimidated, and threatened them "by using the Federal Security Agency as their agent to label, intimidate and bring criminal charges against" Mr. Whitfield (*Id.*, ¶ 34). The Court takes judicial notice of the fact that the Federal Security Agency was abolished in 1953. *See* Reorganization Plan No. 1 of 1953.[1] It

---

[1] A copy of this document is available at: https://www.govinfo.gov/content/pkg/STATUTE-67/pdf/STATUTE-67-Pg631.pdf#page=1.

is further alleged that Ms. Harrison informed Mr. Whitfield that he could not claim to be President of Local 953, in violation of his right to free speech (Dkt. No. 1, ¶¶ 35, 66).

Plaintiffs insist that defendants' conduct has violated the AFGE National Constitution and the Local 953 Constitution and have improperly placed Local 953 under the control of a receivership (*Id.*, ¶¶ 40–50, 52–53, 57–61, 65, 77, 87–89, 92, 100). Plaintiffs further claim that defendants conspired to re-appoint Mr. Davis as Local President and Mr. Gassett as Chief Steward of Local 953 (*Id.*, ¶ 62). Plaintiffs also claim that defendants' "inaction constitute [sic] gross negligence and malfeasance"; that Mr. Gassett and other defendants have "removed union papers without the authority of the executive board or union members and have not accounted for their whereabouts"; and that Mr. Gassett called security to arrest Mr. Whitfield while he was speaking at a union meeting (*Id.*, ¶¶ 69, 73, 83).

Finally, plaintiffs maintain that the NEC has not responded to its October 28, 2017, complaint and that it, too, has failed to abide by the national and local rules, actions which constitute gross negligence and malfeasance (*Id.*, ¶¶ 80–82, 92).

### 3. The Union Defendants Are Entitled To Summary Judgment As A Matter of Law.

The Union Defendants are entitled to summary judgment as a matter of law on the federal claims asserted against them. The Court dismisses with prejudice plaintiffs' pre-empted federal claims and without prejudice plaintiffs' non-pre-empted federal and state-law claims.

#### a. The Labor-Management Reporting And Disclosure Act Of 1959

Congress passed the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*, in response to "concern with widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435 (1982). Title I of the LMRDA "provides

a statutory 'Bill of Rights' for union members, including various protections for members involved in union elections, with enforcement and appropriate remedies available in district court." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 528 (1984). Title IV, in contrast, regulates elections for union offices. *See* 29 U.S.C. § 481. "The exclusive remedy for a violation of Title IV is a civil action brought by the Secretary of Labor to enforce or set aside an election." *Bradley v. Am. Postal Workers Union, AFL-CIO*, 962 F.2d 800, 801 (8th Cir. 1992).

In *Crowley*, the Supreme Court held that "the exclusivity provision included in § 403 of Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed." 467 U.S. at 541. However, the Court expressly left open the possibility that Title IV may not bar post-election relief for Title I claims or other actions "that do not directly challenge the validity of an election already conducted." *Id.* at 541 n.16. In *Trbovich v. United Mine Workers of America*, the Court explained that:

> Any union member who alleges a violation [of Title IV] may initiate the enforcement procedure. He must first exhaust any internal remedies available under the constitution and bylaws of his union. Then he may file a complaint with the Secretary of Labor, who 'shall investigate' the complaint. Finally, if the Secretary finds probable cause to believe a violation has occurred, he 'shall . . . bring a civil action against the labor organization' in federal district court, to set aside the election if it has already been held, and to direct and supervise a new election.

404 U.S. 528, 531 (1972) (quoting 29 U.S.C. § 482).

Here, plaintiffs challenge the validity of an election already conducted, *i.e.*, the October 2016 election. For example, plaintiffs request, among other things, reinstatement to their prior positions on the executive board of Local 953 and that "each of the Defendants be removed from their respective union positions pending a preliminary hearing." (Dkt. No. 1, ¶ 116(h)). Despite plaintiffs' contention to the contrary, the record establishes that they did not properly follow the internal union appeals process, which requires a complainant to file an election protest with the

9

election committee, not the local president. Also, plaintiffs have not alleged that they filed a complaint with the Secretary of Labor, which is the exclusive remedy for contesting the validity of an election already conducted. Further, to the extent plaintiffs seek declaratory or injunctive relief related to the validity of the October 2016 election, those claims are moot. According to the Declaration of Mr. Sanchez, attached as Exhibit 3 to the Union Defendant's Motion for Summary Judgment, Local 953 is currently conducting a new election (Dkt. No. 3, Declaration of Jesus Sanchez ("Sanchez Decl."), ¶¶ 5–11).

Finally, the Court acknowledges that a union member alleging a violation of his right to free speech may file suit against a labor union in federal district court pursuant to 29 U.S.C. §§ 411 and 412. However, at no point in these proceedings have plaintiffs sought relief under these sections.

### b. The Civil Service Reform Act Of 1978

Congress intended the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, "to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system," with "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 444, 445 (1988) (citation and internal quotation marks omitted). The CSRA prohibits various "unfair labor practices" that interfere with federal employees' collective bargaining rights, 5 U.S.C. § 7116, and delegates enforcement to the Federal Labor Relations Authority ("FLRA"), 5 U.S.C. §§ 7104–05, 7118. In *Karahalios v. National Federation of Federal Employees, Local 1263*, the Supreme Court decided that "a breach of the duty of fair representation is an unfair labor practice," and that

10

Congress vested exclusive enforcement authority over this duty in the FLRA and its General Counsel. 489 U.S. 527, 532 (1989). Accordingly, to the extent plaintiffs allege that the Union failed to represent properly its members and was unresponsive to their complaints, those claims are pre-empted by the CSRA.

c. **Receivership Allegations**

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (alteration in original) (quoting *Haden*, 212 F.3d at 469). In their complaint, plaintiffs allege that Local 953 was improperly placed under the control of a receivership, and that "plac[ing] the local A.F.G.E. Union in receivership is only a pretext to cover up the illegal spending of union funds without authorization and abuse of power." (Dkt. No. 1, ¶ 43). Plaintiffs' receivership allegations, while serious, are moot because, as noted above, Mr. Sanchez was assigned by National Vice President Michael Kelly to supervise new elections for Local 953 (Sanchez Decl., ¶ 5). In his declaration, Mr. Sanchez avers:

> On October 5, 2018, I mailed a combined Nomination and Election Notice to all Local 953 members.
>
> Nominations were accepted through mail and needed to be received no later than 12 noon on October 30, 2018.
>
> On November 1 or 2, 2018 I mailed ballots to all Local 953 members and ballots were due back in the Post Office Box by 12 noon on November 27, 2018.
>
> On November 27, 2018, I will pick up the ballots from the Post Office Box and return to the Local 953 Union Office to count the ballots.

11

> The results will be published and a runoff election if necessary will be conducted as soon as possible with a tentative end date of December 21, 2018.
>
> The new officers will be sworn in following the completion of the election and/or runoff election if necessary

(*Id.*, ¶¶ 6–11). Based on Mr. Sanchez's declaration, the Court finds that plaintiffs' receivership allegations are moot.

### d. Procedural Due Process

Plaintiffs raise various allegations regarding the internal disciplinary charges that were brought against them that resulted in their removal from office. The Court interprets these allegations as a procedural due process challenge to the adequacy of the process afforded to them by the Union's internal disciplinary procedures.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999)). "Abstract injuries, by themselves, do not implicate the due process clause." *Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008). Rather, "[a] protected property interest exists where a plaintiff has a 'legitimate claim of entitlement' to a benefit that is derived from a source such as state law.'" *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

The LMRDA safeguards union members against improper discipline. *See McPhetridge v. IBEW, Local Union No. 53*, 578 F.3d 886, 889 (8th Cir. 2009). Specifically, 29 U.S.C. § 411(a)(5) provides that:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by

> any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

This section "does not require unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,' but only to comply with the 'fundamental and traditional concepts of due process.'" *Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996) (quoting *Ritz v. O'Donnell*, 566 F.2d 731, 737 (D.C. Cir. 1977)). "The LMRDA was not intended to permit courts to rewrite union constitutions or to prescribe detailed procedures and standards for the conduct of union business." *Laborers' Int'l Union of N. Am., AFL-CIO v. Nat'l Post Office Mail Handlers,* 880 F.2d 1388, 1395 (D.C. Cir. 1989) (citation and internal quotation marks omitted).

Here, Local 953's procedures at least facially complied with the three procedural mandates of § 411(a)(5)—plaintiffs were notified of the charges against them and given time to prepare defenses, and an AFGE Internal Disciplinary Trial was held before an independent arbitrator. Plaintiffs' contention that Mr. Whitfield and Ms. Hood were not served with written specific charges was rejected by the independent arbitrator, and the Court reaches the same conclusion (Dkt. No. 3, at 3).

Additionally, the Court is mindful of the Supreme Court's admonition in *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 246 (1971), that, in reviewing union disciplinary proceedings, the courts are limited to deciding whether there is "some evidence" to support the charges made. "If the court concludes there was some supporting evidence, the claim should be dismissed." *Rudish v. Int'l Union of Operating Eng'rs, Local 234*, 558 F. App'x 725, 726 (8th Cir. 2014). Further, it has been said that "[a]n interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference by a reviewing

court and should not be overruled unless the court finds that the interpretation was unreasonable or made in bad faith." *Monzillo v. Biller*, 735 F.2d 1456, 1458 (D.C. Cir. 1984)

Having carefully reviewed the independent arbitrator's decisions, the Court finds that there was "some evidence" supporting the decision to remove plaintiffs from office. The Court also finds that the Union's interpretation of its constitution was neither unreasonable nor made in bad faith. Accordingly, plaintiffs' procedural due process claims fail as a matter of law.

### e. Reimbursement Of Travel Costs

Plaintiffs list 22 separate prayers for relief. Among them, plaintiffs demand "reimburse[ment] for all travelling expenses, room and board, food expenses, and all other expenses they would have received *had it been properly presented to the union body for approval*." (Dkt. No. 1, ¶ 116(u) (emphasis added)). Plaintiffs have cited no authority, and the Court has found none, for the proposition that a federal district court may order a labor union to reimburse its members for expenses that were not submitted to the union for approval. In fact, it is likely that such expenditures would violate the LMRDA, which expressly requires a union to expend its money "in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a).

### f. Declaratory Judgment

Plaintiffs also seek a declaratory judgment that "the actions of the Defendants violated Plaintiffs' constitutional rights, civil rights and National and Local rules of the A.F.G.E. Constitution," as well as a declaratory judgment that "the Defendants conspired with each other to deny Plaintiffs, the executive board and the union body their right of autonomy." (Dkt. No. 1, ¶¶ 116(b), (c)).

The Declaratory Judgment Act provides, as relevant here, that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To satisfy the "actual-controversy" requirement of the Declaratory Judgment Act, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and it must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration, citation, and internal quotation marks omitted).

Here, plaintiffs allegations are insufficient to entitle them to the declaratory relief prayed in their complaint. That is because the availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960), and no such federal right exists here. For the reasons explained above, defendants have not violated plaintiffs' federal constitutional or statutory rights, and they have followed the Union's internal disciplinary procedures, at least on the record before the Court. As such, plaintiffs are not entitled to declaratory relief or any relief on the federal claims alleged.

g. **Requests For The U.S. Government To Assume Control And Audit Local 953 And Charge Defendants With Crimes**

Plaintiffs also request that the United States assume control of Local 953 and conduct a forensic audit and full investigation of Local 953's finances, and charge defendants with unspecified crimes (Dkt. No. 1, ¶¶ 116(g), (i)–(j)). Plaintiffs cite no authority for the relief they seek, and defendants correctly point out that authority to investigate labor unions and adjudicate

representation disputes lies primarily with the Secretary of Labor and the FLRA, respectively. *See* 29 U.S.C. § 521(a). Put simply, this is not the appropriate forum in which to seek criminal charges against defendants.

### h. The First Amendment, The Voting Rights Act Of 1965, The Civil Rights Act Of 1964, And Army Regulations

Plaintiffs also request $500,000 for alleged violations of their First Amendment rights to free speech and the Voting Rights Act of 1965 ("VRA"), 42 U.S.C. § 1973 *et seq.* (Dkt. No. 1, ¶ 116(q)). The Union Defendants argue that, because they are not government actors, "neither the free speech rights protected by the First Amendment of the U.S. Constitution nor the 1964 Voting Rights Act can be violated by the Union Defendants or apply to internal union elections or affairs." (Dkt. No. 4, at 22). On this legal point, the Union Defendants are mistaken. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2479 (2018) (holding that "fair-share" agreements, when applied to public-sector workers, violate the First Amendment protections of free association and freedom of speech).

Still, the only factual allegations that plaintiffs make to support their First Amendment claim is that "[t]he action of Defendant Sherri Harrison is a violation of Plaintiff Whitfield's First Amendment Right to Freedom of Speech," and that "[t]his action of the Defendant Sherri Harrison violated Plaintiff Sam Whitfield's First Amendment rights . . . ." (Dkt. No. 1, ¶¶ 35, 66). Apart from the conclusory nature of these allegations, the Court has already determined that it must dismiss this action without prejudice against Ms. Harrison.

With respect to plaintiffs' VRA claim, plaintiffs have not identified any specific provision that was violated or any specific act of a defendant that would support a violation of the VRA. Instead, plaintiffs merely assert that "[d]efendants and each of them have attempted to circumvent the will of the majority by imposing their will upon the union body in violation of the 1964 Voting

16

Rights Act . . . ." (*Id.*, ¶ 22(d)). Plaintiffs' VRA claim fails as a matter of law. Likewise, plaintiffs' bare statement that "[j]urisdiction is also invoked pursuant to Army Regulations 690-600 and further invoked pursuant to the Civil Rights Act of 1964, as amended," is legally insufficient (*Id.*, at 2).

### i. Money Damages

As part of their prayer for relief, plaintiffs request an unspecified amount of damages "for pain and suffering and intentional infliction of emotional distress and harassment," $1,500,000 in punitive damages for "purposely failing to respond to union members' complaint filed on October 28, 2017," and $1,000,000 for "gross negligence and malfeasance." (*Id.*, ¶¶ 116(m)–(o)). Plaintiffs cite no provision of federal law authorizing emotional distress or punitive damage awards for the types of violations described in the complaint. Second, and more to the point, the Court has already determined that each of plaintiffs' federal-law claims fails. To the extent plaintiff asserts state-law tort claims against defendants, and to the extent those claims are not pre-empted by federal law, the Court declines to exercise supplemental jurisdiction over such claims and dismisses without prejudice any such claims.

### j. Injunctive Relief

An injunction is a remedy, not a separate cause of action. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 53d4 U.S. 204, 211 n.1 (2002). Because all of plaintiffs' substantive claims under federal law fail, plaintiffs' requests for injunctive relief based on those federal claims must be denied.

### III. Conclusion

For the foregoing reasons, the Court grants the Union Defendants' motion for summary judgment (Dkt. No. 3). The Court dismisses with prejudice plaintiffs' pre-empted federal claims

against the Union Defendants. The Court dismisses without prejudice plaintiffs' non-pre-empted federal and state-law claims against the Union Defendants. The Court also grants Ms. Harrison's motion to dismiss and dismisses without prejudice plaintiffs' claims against Ms. Harrison (Dkt. No. 23). Finally, the Court dismisses without prejudice plaintiffs' claims against the Doe defendants.

It is so ordered this 18th day of March, 2020.

_____
Kristine G. Baker
United States District Judge